[No. A134662. First Dist., Div. Four. Feb. 14, 2014.]

In re the Marriage of JACQUELINE GRÉAUX and TRISTAN MERMIN. JACQUELINE GRÉAUX, Appellant, v. TRISTAN MERMIN, Respondent.

**COUNSEL**

Jacqueline Gréaux, in pro. per., for Appellant.

Law Offices of Cecilia D. Lannon, Cecilia D. Lannon; Weixel Law Office and James V. Weixel for Respondent.

**OPINION**

**RIVERA, J.**—In a divorce proceeding, the court awarded the community business to the husband and issued an order restraining the wife from working in the same business, anywhere, for five years. Business and Professions Code section 16600[1] renders void any *agreement* that restrains an individual from engaging in a lawful occupation or enterprise except as otherwise provided by statute. Two questions are posed in this appeal: Whether the statute prohibits the issuance of the noncompetition *order*, and, if not, whether the court's order in this case was nonetheless invalid.

We hold that section 16600 does not prohibit the issuance of a noncompetition order. However, the state's policy favoring an individual's right freely to practice his or her chosen trade or profession requires that any such restrictions be based upon evidence showing they are reasonably necessary to preserve the value of the asset awarded in the division of marital property. In this case, there appears to be no basis for the order's broad geographic restriction. Accordingly, we reverse and remand.

---

[1] All further statutory citations are to the Business and Professions Code unless otherwise indicated.

## I. PROCEDURAL HISTORY

The issue presented on appeal is a narrow one, so we need not recite the lengthy procedural background of this matter. In brief, this dissolution action was filed by Jacqueline Gréaux (wife) in 2009, and proceeded to a six-day trial over a period of three months in 2011. It appears from the court's statement of decision that the only contested issues at trial were (1) the disposition and value of two community property businesses, and (2) spousal support. The parties did not provide any record of the trial, presumably because they do not dispute any of the court's factual findings. Nor does wife, the appellant here, seek to overturn any of the court's orders providing for the disposition and valuation of the community assets. Accordingly, we shall summarize the court's findings on those matters and then proceed to the legal issue at the heart of this appeal.

Tristan Mermin (husband) and wife owned and operated two businesses, Specialty Application and Finishes (SAF) and Saint Bart's Spirit Company (SBSC). At the request of the parties, SAF was assigned a zero value and awarded to husband. After consideration of all applicable factors, the court declined to award spousal support to either party. The primary dispute related to SBSC.

SBSC was created from the parties' joint efforts during the marriage, and therefore was community property. The business of SBSC was to formulate and market a particular type of spirits called *"rhum agricole."* "Both parties brought unique talents to SBSC."

Although husband had little formal education or training in business, his "considerable drive, energy and determination were crucial to SBSC's launch and its progress as a functioning business." It was husband who marshaled the support and services of others "whose experience and contacts were invaluable to the startup company[,] and his own business skill advanced with the company's development."

Wife possessed "natural sales and marketing skills that enabled the business to make a mark at the retail level as a potentially successful product in the competitive retail market." It was also wife's family contacts in the Caribbean that gave rise to the business, and her grandfather's experiences as a merchant seaman—including his nickname "Batiste"—that "was fashioned as the product's original 'brand story.' " Wife also had "an impressive understanding of the production techniques and the unique nature and characteristics of *rhum agricole*," as well as a discerning palate which qualified her to be an "official industry 'taster.' " "SBSC could not have found a more suitable 'brand ambassador' [as s]he was quite literally 'the face of the brand,' as stated in one of the company's investment prospectuses."

The parties contributed a great deal of hard work to launch the company. Wife achieved "remarkable" sales accomplishments (she secured all of the company's retail accounts). Husband set up the company, arranged for "the product's development, production, transportation, distribution, [and] introduction to the broader market, and . . . attract[ed] the capital necessary to convert a business idea into an operational enterprise." Although wife "participated in some of those activities and made some significant contributions along the way, . . . her involvement was not the impetus that drove the business'[s] 'launch.' "

The parties, however, had personal conflicts that took their "inevitable toll on the business itself . . . [e]ven during the company's earliest, most formative days." We need not delve into the details of these conflicts as recited by the court, but at some point it became clear the marriage would not survive, and wife filed a petition for dissolution. Worse for SBSC, wife filed concurrent actions against SAF and SBSC, and lawsuits against key SBSC resource contacts. Wife also disrupted the business operations of SBSC by withdrawing operating capital on two occasions and making statements to employees "portending the demise of the businesses."

In the lawsuits, wife sought to dissolve SAF and SBSC, assailed the personal integrity of individuals associated with SBSC, and "substantially compromise[ed] the company's ability to attract essential capital." She alleged that SBSC was " 'insolvent or in imminent danger of becoming insolvent,' " and accused product suppliers, corporate officers and corporate counsel of fraud and conspiracy. "Although she ultimately dismissed all of those actions, considerable harm had already been done."

At trial, wife offered evidence indicating that husband's "efforts to run SBSC post-separation were less than exemplary," but ignored her own part in taking actions aimed at destroying both the business and the reputations of persons "upon whom and whose good will SBSC's future depended." Ultimately, wife acknowledged that "had she considered it [when she filed the actions] she could not have failed to perceive their debilitating effects on the business. . . ."

Wife asked the court to award the business to her at zero value, arguing that husband had " 'run SBSC into the ground,' " and citing an expert's opinion that the company was essentially a business shell. The court took issue with wife's characterization of the expert's testimony. According to the court, the expert testified that "although the company had never earned a profit, had no good will and a negative book value, . . . it had what he termed 'in-place value,' consisting of '[in-place] contracts to distill and distribute coupled with the beginning production and distribution channels,' which he

speculated 'probably has some value attached for purposes of division of community property.' And, while it was 'not a part of [his] regular valuation practice to value the worth of such contracts,' he nevertheless ventured the opinion that SBSC's 'in-place value' . . . was approximately $49,000." Although the court was skeptical about the expert's testimony because "it sounded almost as if he were attempting to capitalize SBSC's sentimental value," it nevertheless accepted "the company's dubious $49,000 'in-place value' as a going concern" because it was more than offset by husband's postseparation investments of time and money—valued by the expert between $43,750 and $70,000—which was the only reason SBSC "might still have any hope of survival at all."

The court awarded SBSC to husband. It found that, while wife had an "exceptional aptitude for marketing and sales" due to her "engaging personality," husband was "better qualified by experience to run the business." Further, husband had "demonstrated the will and ability to [run the business] under extremely adverse circumstances," while wife had shown "a willingness to sacrifice the interests of SBSC for what appeared to have been little more than spiteful retribution."

In its intended decision, the court stated: "[Wife] shall be ordered to surrender all of her stock shares to the corporation and to execute all documents and perform all acts necessary to effectuate the order. [Wife] shall refrain from further conduct intended or likely to damage either business in any way and shall be subject to a five-year non-competition order." All assets and obligations of SBSC were assigned to husband.

Husband prepared a proposed statement of decision and a proposed judgment, to which wife filed objections.[2] The proposed judgment included far more detailed language than that contained in the intended statement of decision concerning the restraints to be imposed upon wife postdissolution. Specifically, husband proposed that wife be restrained and enjoined from (1) contacting or communicating with "any person or entity in the SBSC/Batiste infrastructure" including its growers, distillers, shippers, bottlers, distributors, attorneys, employees, consultants, customers "or other persons doing business with SBSC"; (2) holding herself out as a representative of SBSC or of the brand Batiste; (3) holding herself out as having any connection or involvement with SBSC or Batiste rum; and (4) entering the premises of SBSC or dealing with the books, bank accounts and records of SBSC.

Husband also proposed that wife be "restrained and enjoined from competing with [husband] or SBSC for a period [of] five years from entry of

---

[2] Wife's objections to the proposed statement of decision are not pertinent to this appeal.

judgment herein. She shall not . . . [set] up a company of her own or with other investors, or persons or entities engaged in the production, bottling, marketing or selling [of] *Rhum Agricole* or rum of any kind, wherever produced or grown. Further, [Wife] shall not consult with any person or entity that is in competition with or could be in competition with SBSC's rum product or who proposes to offer a competing product. She shall not work for a competitive *Rhum Agricole* product or other rum product during the five year period."

Wife challenged this proposed order, arguing that section 16600 renders void any clause "by which anyone is restrained from engaging in a lawful profession, trade or business," and that the proposed noncompetition order violated California's " 'settled public policy in favor of open competition.' " Wife also objected to the court's intended decision due to its failure to identify any authority upon which it relied. "Given the strong policy underlying the right to work, the non-competition provisions must be supported by . . . legal reasoning recited in the *Statement of Decision*, and by cited authority, if such exists, or [it must] be removed entirely." The court overruled wife's objections, adopted husband's proposed statement of decision, and entered judgment. Wife appealed.

## II. DISCUSSION

### A. *Noncompetition Agreements Under California Law*

Section 16600 provides, "[e]xcept as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." This has not always been the rule. "Under the common law . . . contractual restraints on the practice of a profession, business, or trade, were considered valid, as long as they were reasonably imposed. [Citation.] . . . However, in 1872 California settled public policy in favor of open competition, and rejected the common law 'rule of reasonableness,' when the Legislature enacted the Civil Code. [Citations] [fn. omitted.] Today in California, covenants not to compete are void, subject to several exceptions . . . ." (*Edwards v. Arthur Andersen LLP* (2008) 44 Cal.4th 937, 945 [81 Cal.Rptr.3d 282, 189 P.3d 285] (*Edwards*).) Those exceptions include noncompetition agreements made in connection with the sale of a business (§§ 16601, 16602.5) or the dissolution of a partnership (§ 16602). The code does not address the issuance of noncompetition orders.

## B. *The Contentions of the Parties*

Husband argues: Section 16600, by its terms, applies only to noncompetition *agreements*, and therefore does not forbid noncompetition orders contained in a judgment issued by a court in a dissolution action. Family law courts have broad statutory powers to make any orders the court considers necessary to achieve a fair and equal division of the community property, including a do-not-compete order. If section 16600 were interpreted to prohibit such family law orders, the proscription would unduly restrict the court's inherent equitable powers and inhibit its ability to achieve a fair division of property. The order entered here was a "logical way to preserve the integrity of [the court's] award of SBSC to [husband] and the value of the business," and was supported by ample evidence. Sister state family law courts have issued similar orders.

Wife argues: The right to engage in a lawful profession or enterprise is not based solely on the language of section 16600 (which is limited to "contract[s]"), but is a pronouncement of a strong public policy that applies generally. The state's policy supports free and open competition and employee mobility, and a court-imposed noncompetition order violates that policy. Section 16601 by its terms authorizes only noncompetition *agreements* and does not authorize injunctions imposed by judicial fiat in dissolution actions. In the sister state cases cited by husband, the courts did not reject, but embraced, the principle that such orders are against public policy unless they are reasonably necessary to protect the value of the property and do not violate applicable statutes. Accordingly, if it is concluded that noncompetition orders are authorized, the order issued by the court in this action is overbroad in scope and invalid on that basis.

We conclude that both parties are partially correct.

## C. *Analysis*

### 1. *The Competing Public Policies*

By its express terms, section 16600 prohibits—with specified exceptions—*contracts* that seek to limit competition.[3] (*Edwards, supra*, 44 Cal.4th 937, 946–947.) But this statutory prohibition on noncompetition agreements reflects not just a prohibition on *contracts* restricting one's business or employment but a "settled policy in favor of open competition." (*Howard v. Babcock*

---

[3] The right of free competition is also constrained by California's Uniform Trade Secrets Act, which prohibits the use of another's trade secrets to compete even where the parties have entered into an invalid noncompete agreement under section 16600. (Civ. Code, § 3426 et seq.; *Morlife, Inc. v. Perry* (1997) 56 Cal.App.4th 1514, 1520 [66 Cal.Rptr.2d 731]; *Scott v. Snelling and Snelling, Inc.* (N.D.Cal. 1990) 732 F.Supp. 1034, 1042.)

(1993) 6 Cal.4th 409, 416 [25 Cal.Rptr.2d 80, 863 P.2d 150]; see *Kelton v. Stravinski* (2006) 138 Cal.App.4th 941, 946 [41 Cal.Rptr.3d 877]; *Hill Medical Corp. v. Wycoff* (2001) 86 Cal.App.4th 895, 900 [103 Cal.Rptr.2d 779] (*Hill*).) "The rule making void contracts in restraint of trade is not based upon any consideration for the party against whom the relief is sought, but upon considerations of sound public policy. [Citation.]" (*Pacific Wharf etc. Co. v. Dredging Co.* (1920) 184 Cal. 21, 24–25 [192 P. 847].) "California courts have consistently declared [section 16600] an expression of public policy to ensure that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice." (*Metro Traffic Control, Inc. v. Shadow Traffic Network* (1994) 22 Cal.App.4th 853, 859 [27 Cal.Rptr.2d 573]; see *Strategix, Ltd. v. Infocrossing West, Inc.* (2006) 142 Cal.App.4th 1068, 1072 [48 Cal.Rptr.3d 614] ["California's public policy affirms a person's right to pursue the lawful occupation of his or her choice."].)

■ Countervailing the public policy in favor of free competition is the state's " 'paramount interest' " in the fair and equal distribution of marital property upon the dissolution of a marriage. (*In re Marriage of Potter* (1986) 179 Cal.App.3d 73, 81 [224 Cal.Rptr. 312].) Family courts have therefore been granted broad statutory powers to accomplish a just and equal division of marital property (Fam. Code, §§ 2550, 2553) and possess "broad discretion to determine the manner in which community property is awarded in order to accomplish an equal allocation. [Citation.]" (*In re Marriage of Andresen* (1994) 28 Cal.App.4th 873, 880 [34 Cal.Rptr.2d 147].) "This task constitutes a nondelegable judicial function [citation] which must be based upon substantial evidence [citation]." (*Ibid.*) Pursuant to statute, the court may make "any orders the court considers necessary" to achieve the statutory mandate. (Fam. Code, § 2553.) We review those orders only for abuse of discretion. (*In re Marriage of Quay* (1993) 18 Cal.App.4th 961, 966 [22 Cal.Rptr.2d 537] (*Quay*).)

We must therefore determine whether the public policy affirming an individual's right to engage in a trade or business of his or her choosing trumps the family court's authority to issue *any orders*—and specifically a noncompetition order—to achieve an equal division of marital property. We conclude it does not.

It is our view that California's policy affirming that every person should have the right to pursue any lawful employment and enterprise of his or her choice is not undermined when a noncompetition order is imposed as part of a marital judgment, particularly as informed by the analogous statutory scheme governing noncompetition clauses. So, for example, noncompetition clauses are expressly permitted in connection with the sale or dissolution of a corporation (§ 16601), the dissolution of a partnership (§ 16602), or the sale

or dissolution of a limited liability corporation (§ 16602.5).[4] (*Edwards, supra*, 44 Cal.4th at pp. 943–944.) As a general rule, the "value" being protected by a noncompetition clause is the goodwill of the business. "Where a covenant not to compete is executed as an adjunct of a sale of a business there is an inference that the business had a 'goodwill' and that it was transferred." (*Monogram Industries, Inc. v. Sar Industries, Inc.* (1976) 64 Cal.App.3d 692, 701 [134 Cal.Rptr. 714].) Indeed, noncompetition agreements will not be enforced if a close examination of the purchase and sale agreement demonstrates that no goodwill was included in the sale. "In order to restrain the seller's profession, trade, or business, there must be a clear indication that in the sales transaction, the parties valued or considered goodwill as a component of the sales price, and thus the . . . purchasers were entitled to protect themselves from 'competition from the seller which competition would have the effect of reducing the value of the property right that was acquired.' " (*Hill, supra*, 86 Cal.App.4th at p. 903.) Goodwill is often referred to as the expectation of continued patronage that has become an asset of the business. (*Id.* at p. 902, fn. 6.)

In connection with the valuation of a business in a dissolution action, the court must decide whether the business has any goodwill, and if so, what is its value. (*In re Marriage of Lopez* (1974) 38 Cal.App.3d 93, 109 [113 Cal.Rptr. 58], disapproved on other grounds in *In re Marriage of Morrison* (1978) 20 Cal.3d 437, 453 [143 Cal.Rptr. 139, 573 P.2d 41].) "Essentially, goodwill in a dissolution context is a portion of the value of the [business] as a going concern. [Citation.]" (*In re Marriage of Rives* (1982) 130 Cal.App.3d 138, 149 [181 Cal.Rptr. 572] (*Rives*).) A family court's discretion in dividing marital property includes the authority to award a marital business to one spouse as a means to achieve equity in the division of property. (*In re Marriage of Kozen* (1986) 185 Cal.App.3d 1258, 1262 [230 Cal.Rptr. 304]; *In re Marriage of Burlini* (1983) 143 Cal.App.3d 65, 70 [191 Cal.Rptr. 541].) It therefore follows that, if an ongoing marital business is being awarded to one spouse, and if the value of that business includes goodwill, a family court should have the power, pursuant to Family Code section 2553, to issue a noncompetition order so that the value of that asset is preserved, just as a noncompetition clause in a business purchase and sale agreement is designed to protect the value of the asset purchased. Decisions from our sister states

---

[4] Section 16601 includes all of the following transactions: The sale of "the goodwill of a business," the sale or disposition of "all of [the] ownership interest in [a] business entity," or the sale of "(a) all or substantially all of its operating assets together with the goodwill of the business entity, (b) all or substantially all of the operating assets of a division or a subsidiary of the business entity together with the goodwill of that division or subsidiary, or (c) all of the ownership interest of any subsidiary . . . ."

are largely in accord.[5] (*Fischer, supra,* 834 P.2d 270; *Lord v. Lord* (Me. 1983) 454 A.2d 830 (*Lord*); *Holland v. Holland* (2001) 2001 WY 113 [35 P.3d 409]; *Cesar v. Sundelin* (2012) 81 Mass.App.Ct. 721 [967 N.E.2d 171] (*Cesar*); *Carr v. Carr* (1985) 108 Idaho 684 [701 P.2d 304] (*Carr*).)

Thus, for example, in *Carr,* the parties owned and operated a truckstop, which was primarily under the husband's management. After the separation, the husband chose not to purchase the wife's share of the business, so the truckstop was put up for sale. (*Carr, supra,* 701 P.2d at p. 307.) The prospective purchasers demanded a covenant not to compete in connection with the purchase; the husband refused to sign because he had planned to open a truckstop on property he owned adjacent to the truckstop being sold. (*Ibid.*) The court ordered the husband to execute the covenant so that the business could be sold. The husband did so, but challenged the order on appeal. (*Ibid.*) The court concluded the order was appropriate because, "[i]n effect, . . . the magistrate was requiring that the goodwill of the truck stop business be sold along with the tangible assets and the accounts receivable." (*Carr, supra,* 701 P.2d at p. 308.) The court reasoned, "[g]iven the trial court's authority in a divorce action to order the sale of a community business to effectuate property disposition, the issue is whether a trial court may require a business's goodwill to be included in the sale. We hold that it may." (*Ibid.*)

This reasoning supports our conclusion that, as a general proposition, a party to a marital dissolution may be ordered not to compete where it is necessary to protect the value of a marital asset.[6] We believe this rationale applies whether the business is sold to a third party or assigned to one of the spouses as an ongoing concern.

Two states have diverged from this view. (See *Favell v. Favell* (1997) 1998 OKCIVAPP 22 [957 P.2d 556]; *Ulmer v. Ulmer* (Tex.App. 1986) 717 S.W.2d 665.) In those cases the courts concluded that a noncompetition order made in connection with the transfer or sale of a marital asset would be an unauthorized division of postmarital earning capacity. (*Favell, supra,* 957 P.2d at p. 561; *Ulmer, supra,* 717 S.W.2d at p. 667.) We disagree.

---

[5] Some courts go further and limit the family court's authority to issue noncompetition orders to those circumstances where the marital property division is akin to the type of transaction in which a noncompetition clause is permitted by statute. (See, e.g., *In re Marriage of Fischer* (Colo.Ct.App. 1992) 834 P.2d 270, 272–273 (*Fischer*).) Our analysis of the issue, however, does not require us to reach this question.

[6] In addition to goodwill, the value of a marital asset's trade secrets may also be an appropriate matter for the family court to consider. We note, however, that husband has not asserted that the challenged order was necessary to protect the trade secrets of the business.

It is the family court's obligation to value and divide the community estate of the parties equally, and this includes the value of the goodwill of any community asset. (Fam. Code, § 2550; see, e.g., *In re Marriage of King* (1983) 150 Cal.App.3d 304, 308–309 [197 Cal.Rptr. 716].) To be sure, all postseparation earnings are separate property under California law (Fam. Code, § 771), and "the expectancy of future earnings is not synonymous with and should not be the basis for determining the value of goodwill in a community property business." (*Rives, supra*, 130 Cal.App.3d at p. 150; see *In re Marriage of Aufmuth* (1979) 89 Cal.App.3d 446, 463 [152 Cal.Rptr. 668], disapproved on other grounds in *In re Marriage of Lucas* (1980) 27 Cal.3d 808, 815 [166 Cal.Rptr. 853, 614 P.2d 285] ["[I]t would be anomalous to value a community asset solely upon the 'postmarital efforts of either spouse.' "]). But that is not what occurs when a marital asset is transferred for value with a concomitant noncompetition order. So, for example, where the sale of a community asset to a third party includes the imposition on one spouse of a covenant not to compete, and that covenant *gives value to the community asset*, the cost of any detriment suffered by the spouse due to the noncompetition restrictions is properly treated as part of the valuation and division process. (*Quay, supra*, 18 Cal.App.4th at p. 968.) Because the future effects of a noncompetition clause imposed in connection with the sale or assignment of a community asset are part of the equation for determining the value of the community asset *upon dissolution*, it does not constitute a division of future earning capacity.

In sum, neither section 16600 nor California's public policy in favor of free and open competition prohibits the issuance of a noncompetition order by a family court.

### 2. *The Limits of Discretion*

While the state's policy disfavoring restraints on the pursuit of one's chosen trade or business does not proscribe the issuance of a noncompetition order in a marital dissolution action, that policy nevertheless should inform the court's statutory and equitable powers. We have found no California authority that sets standards for measuring the validity of such an order and, accordingly, we look to the decisions of our sister states for guidance.

In *Lord*, the trial court awarded the parties' insurance agency to the husband "on the condition that he pay [the wife] one half of [its value] and on the further condition that, in exchange for that payment, [the wife] covenant 'not to engage, either directly or indirectly on her own or in the employ of another, in the insurance business in any form for a period of seven (7) years within a radius of 60 miles of [the town where the business was conducted].' " (*Lord, supra*, 454 A.2d at p. 832.) On appeal, the Supreme

Court of Maine upheld, in principle, the family court's authority to impose a noncompetition order. (*Id.* at p. 834.) It nonetheless reversed the judgment, reasoning that *agreements* in restraint of one's right to work are against public policy and therefore "[t]he constraints of public policy are even more demanding in the present case . . . [in which the wife] has not consented to the covenant and the court is mandating rather than enforcing an agreement." (*Id.* at pp. 834–835.)

The *Lord* court found the restrictions imposed on the wife to be unduly harsh, without an adequate evidentiary basis for their necessity. "The only evidence which supports the rationality of such a severe restriction is the fact that similar terms were imposed when the parties 'bought out' three agencies in the [same] area. The fact that such terms were acceptable in a voluntary sale does not establish that they are reasonably necessary to preservation of the value of good will." (*Lord, supra,* 454 A.2d at p. 835.) Because the record did not show how the court valued the agency's goodwill—whether it was comprised primarily of renewals from existing customers or included a component of value for sources of new business—the supreme court was unable to evaluate whether the terms of the noncompetition order were necessary to protect the value of the asset. (*Id.* at p. 835.) On remand, the trial court was directed to "define the nature and components of the good will included in the determination of value and then proceed to determine the scope of any restraint which may be reasonably necessary to protect the value of the asset." (*Ibid.*; see *Cesar, supra,* 967 N.E.2d at p. 173 ["the terms of any such [noncompetition] order must be 'reasonable and no broader than necessary to protect the good will included in the valuation and transfer' "]; *Fischer, supra,* 834 P.2d at pp. 272–274 [noncompetition order was properly limited in time (three years), geography (within 20 highway miles) and subject matter (husband expressly permitted to pursue another business)].)

We agree with the approach taken in these cases. In keeping with our state's policy of freedom to choose one's trade or business, noncompetition orders must be " 'reasonable and no broader than necessary to protect the good will included in the valuation and transfer.' " (*Cesar, supra,* 967 N.E.2d at p. 173.) Looking, again, at the statutes allowing noncompetition clauses in connection with certain commercial transactions, we observe that a transferor may agree to refrain from carrying on "a similar business within a specified geographic area" where the prior business has been carried on, so long as the person receiving ownership of the business or the goodwill "carries on a like business therein." (§§ 16601, 16602, 16602.5.) Thus, "[t]he geographic scope of a noncompetition covenant must be limited to the area where the sold company carried on business because '[o]therwise, a seller could be barred from engaging in its business in places where it poses little threat of

undercutting the company it sold to the buyer.' [Citation.]" (*Alliant Ins. Services, Inc. v. Gaddy* (2008) 159 Cal.App.4th 1292, 1301 [72 Cal.Rptr.3d 259].)

Using the statutes and the cases construing them for guidance, we conclude that, if a family court's noncompetition order is not restricted to the geographic area where the parties carried on the marital business, there must be evidence to support the need for a broader order. Additionally, just as a court's valuation of property must be based on findings supported by substantial evidence (*In re Marriage of Micalizio* (1988) 199 Cal.App.3d 662, 672–673 [245 Cal.Rptr. 673]), so, too, must the terms of a noncompetition order—i.e., the scope of prohibited activities and the length of the prohibition—be based on findings supported by substantial evidence that they are reasonably necessary to protect the value of the asset awarded in the dissolution.

██  Here, wife was restrained from working in a *rhum agricole* business or other rum product business, or any other business that "could be in competition with SBSC's rum product" for a period of five years, without geographical limitation. The family court's statement of decision, however, contains nothing about the geographic market of SBSC at the time of the dissolution, nor does it contain any findings to support the unlimited geographic reach of the order. The court therefore abused its discretion, and the noncompetition order must be vacated.[7]

Because we are remanding the matter for further proceedings, we also provide the following considerations for the guidance of the trial court.

As a general rule, the "value" being protected by a noncompetition clause is the goodwill of the business. (*Monogram Industries, Inc. v. Sar Industries, Inc., supra*, 64 Cal.App.3d at p. 701.) According to the trial court's statement of decision, there was undisputed evidence that SBSC had no value attributable to goodwill, but did have an "in-place value" (based on existing contracts) of $49,000. Because the issue is not before us, we express no opinion as to whether a noncompetition order can be imposed in the absence of goodwill if there is some other evidence demonstrating a need to protect the value of the asset assigned to one of the parties by the issuance of a

---

[7] On remand the court should also consider clarifying the meaning of the phrase "any person or entity that . . . could be in competition with SBSC's rum product." This phrase can be interpreted either very narrowly or very broadly; the parties should be provided a clear understanding of its meaning.

noncompetition order. It is clear, however, that a court must be able to point to evidence that supports the necessity of the order to protect the value of the business "as a going concern." (Cf. *Rives, supra*, 130 Cal.App.3d at p. 149; see *In re Marriage of Slater* (1979) 100 Cal.App.3d 241, 246 [160 Cal.Rptr. 686].)

### D. *Scope of Reversal*

Although wife filed a notice of appeal from the "judgment," it was made crystal clear in her briefs that she was challenging only that part of the judgment imposing a noncompetition clause: "Appellant . . . contends that in entering its judgment restraining and enjoining her for five years from competing in business with her now-former spouse . . . , the court below in this marital dissolution action violates California's strong public policy against restraining California citizens from engaging in a lawful profession, trade, or business. . . . The judgment *in this regard* should be reversed." (Italics added.) "What appellant challenges here on appeal is the trial court's additional ruling, made a part of its judgment, that imposes [a five-year noncompetition order] on [wife]." "Wherefore, Appellant respectfully suggests that the trial court's imposition of this broad form of injunction falls far outside its discretion and should be reversed here on appeal."

An appeal may be taken from a part of a judgment if it is severable, in which case the appellate court will not consider the parts from which no appeal has been taken. (*Culbertson v. Cizek* (1964) 225 Cal.App.2d 451, 471 [37 Cal.Rptr. 548].) A reversal of the portion of the judgment from which the appeal has been taken has no effect upon the remainder of the judgment. (*Ibid.*) " 'The test of whether a portion of a judgment appealed from is so interwoven with its other provisions as to preclude an independent examination of the part challenged by the appellant is whether the matters or issues embraced therein are the same as, or interdependent upon, the matters or issues which have not been attacked. [Citations.]' " (*Id.* at pp. 471–472; see *Gonzales v. R. J. Novick Constr. Co.* (1978) 20 Cal.3d 798, 804–806 [144 Cal.Rptr. 408, 575 P.2d 1190].)

We have reviewed the judgment and conclude that the issues pertaining to the noncompetition order—the portion of the judgment appealed from—are neither the same as, nor interdependent upon, the remaining portions of the judgment, which wife did not challenge. Accordingly, we reverse only paragraph (2)(B)(2)(e) (under the heading 4.o Property Division) of the judgment.

## III. DISPOSITION

Paragraph (2)(B)(2)(e) (under the heading 4.o <u>Property Division</u>) of the judgment is reversed, and the matter is remanded to the family court for further proceedings consistent with this opinion, including reconsideration of the geographic scope of the noncompetition order.

Ruvolo, P. J., and Reardon, J., concurred.