Filed 3/20/25  Marriage of Strulyov CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of EKATERINA and EUGENE STRULYOV. | H052147<br>(Santa Clara County<br>Super. Ct. No. 19FL001660) |
| EKATERINA STRULYOV,<br><br>Respondent,<br><br>v.<br><br>EUGENE STRULYOV,<br><br>Appellant. | |

This dissolution of marriage action returns to us for the second time on appeal. Appellant Eugene Strulyov asserts that the trial court, after conducting a limited hearing on the division of an omitted stock asset, erred in ordering him to transfer half of the shares of the community's omitted Google stock to respondent Ekaterina (Katia) Strulyov.  Eugene[1] also challenges the trial court's denial of his request for a statement of decision and his peremptory challenge against the trial judge.  Katia disputes Eugene's contentions and asks this court to levy sanctions against him.

---

[1] Because the parties share a last name, for clarity we refer to them by first name.

For the reasons explained below, we affirm the trial court's findings and order after hearing and deny the motion for sanctions.

## I. FACTS AND PROCEDURAL BACKGROUND

*A. The Prior Appeal*

The prior appeal in this case addressed three trial court rulings challenged by Eugene and affirmed two of the three, reversing and remanding on the limited issue of the division of the Google stock. (*In re Marriage of Strulyov* (July 27, 2023, H050115) [nonpub. opn.].)[2] Specifically, in *Strulyov*, we upheld the trial court's determination under Family Code[3] section 2556 that the Google stock was an omitted asset in the November 2019 judgment of dissolution (2019 judgment). Nevertheless, we concluded that the trial court had abused its discretion by failing to address Eugene's argument that there was good cause to order the Google stock should *not* be divided equally, based on his assertion that Katia had received the equivalent value for her share of the Google stock in the division of assets under the 2019 judgment. We remanded "for the limited purpose of a determination by the trial court whether the interests of justice require an unequal division of the Google stock" under sections 2556 and 2550. We expressly refrained from dictating how the trial court should exercise its discretion with respect to the division of the Google stock and left to the trial court whether it should make its determination based on the existing record or consider additional evidence.

The remittitur transferring jurisdiction back to the trial court issued on September 26, 2023.

---

[2] On our own motion, we take judicial notice of the record on appeal filed in this court in H050115, as well as this court's unpublished opinion in that matter. (Evid. Code, §§ 451, subd. (a), 452, subd. (d), 459, subd. (a).) As the parties are already familiar with the facts and procedural history set forth in the unpublished opinion in H050115, we do not repeat them here.

[3] All further unspecified statutory references are to the Family Code.

*B. Proceedings on Remand*

In October 2023,[4] the parties appeared before the trial court to set the hearing on the remanded issue of the Google stock division. The same bench officer whose findings and orders were the subject of the prior appeal presided at the hearing and scheduled a half-day evidentiary hearing for November 29.

### 1. Eugene's Peremptory Challenge

On November 3, Eugene filed a peremptory challenge to the trial judge pursuant to Code of Civil Procedure section 170.6. Eugene asserted that following his successful appeal, he believed he could not "have a fair and impartial trial or hearing before this Judge." Katia opposed the peremptory challenge on the ground that the matter to be decided was not a "new trial" within the meaning of Code of Civil Procedure section 170.6, subdivision (a)(2)[5] and so there was no legal basis for a peremptory challenge. Eugene argued in his reply that the remand did set the matter for a new trial, given the nature of the evidence and findings required to evaluate whether there was good cause for an unequal division of assets and considering the appellate court in *Strulyov* expressly recognized that the trial court might elect to consider additional evidence in making that determination. The trial court denied the peremptory challenge as untimely.

### 2. Evidentiary Hearing on Division of Google Stock

The parties exchanged trial briefs and Eugene filed motions in limine prior to the evidentiary hearing.

In his trial brief, Eugene requested a statement of decision on specified issues including the "dollar value" of the community asset division, how an asset can be

---

[4] Unless otherwise stated, further date references are to 2023.

[5] This subdivision provides in pertinent part that a party may bring a motion for peremptory challenge "following reversal on appeal of a trial court's decision, or following reversal on appeal of a trial court's final judgment, if the trial judge in the prior proceeding is assigned to conduct a new trial on the matter. . . . The motion shall be made within 60 days after the party or the party's attorney has been notified of the assignment." (Code Civ. Proc., § 170.6, subd. (a)(2).)

" 'omitted' " when the party had already received the dollar value of that asset, and why the trial court ruled that the peremptory challenge was untimely despite the timing of the remittitur and filing of the peremptory challenge. Eugene argued that (1) Katia already received the full cash value of her share of the Google stock when the parties divided the community assets in 2019, and (2) Katia already received more than half of the community property, which the trial court's April 2022 order and imposition of sanctions (addressed in the prior appeal) further exacerbated. To remedy these inequities, Eugene requested that the trial court reverse the order requiring equal division of the Google stock, reconsider its prior sanctions order of $60,000, and consider an award of attorney fees in his favor.

Katia filed an amended trial brief in which she identified an additional 10 shares of Google stock that Eugene had received between April and July 2019, and which he disclosed in his trial brief on remand as having vested after the date of separation. These additional 10 shares were not included in the earlier accounting of the 36 shares of stock that the trial court determined were an omitted asset and which were the subject of the remand in *Strulyov*, *supra*, H050115. Katia asserted that Eugene's failure to divide the Google stock constituted a breach of fiduciary duty. Katia argued that Eugene failed to divide the accounts equally by transferring stocks based on their value in April 2019 (when he calculated the division) rather than July 2019 (the date of division), retaining for himself those stocks with a zero or positive cost basis (thereby avoiding taxes or offsetting other gains), and selecting stocks for her on which she would have to pay capital gains tax (thereby shifting the tax burden to her). She asserted that these breaches of fiduciary duty undermined his good cause argument for an unequal division of the Google stock.

The evidentiary hearing took place on February 27, 2024, and was reported by a court reporter. The trial court noted that the issue before the court was "very limited" and that the court would issue "a written order" rather than a statement of decision. The court

4

heard testimony from both parties, each of whom was cross-examined, and considered their written closing statements. Katia disputed the equitability of the property division carried out by Eugene under the 2019 judgment based on his unilateral decisionmaking about which stocks to transfer, the timing of the security transfers, their cost bases and tax impacts on the respective parties, and Eugene's undisclosed receipt of 10 additional Google stock shares. Katia also argued for an award of attorney fees for what she characterized as Eugene's breach of fiduciary duty. Eugene asserted that his documentation in 2019 accurately reflected the division of the investment accounts, that the Court of Appeal had agreed that the " 'full [investment] value . . . was included in the numbers from which Katia and Eugene determined the total value of the community property' " (citing *Strulyov*, *supra*, H050115, italics omitted), and that her receipt of more than half of the community property in 2019 justified returning the shares of Google stock to him.

### 3. Findings and Order After Hearing

On March 25, 2024, the trial court issued a written findings and order after hearing (order). The court clarified that it would not address or rule upon any of the additional issues raised by the parties in their briefing or at trial. After summarizing the parties' positions, the court explained that it found persuasive Katia's argument concerning Eugene's unilateral selection of which stocks to transfer, and the tax consequences of those selections, "with respect to the valuation and division of the parties' stock, and in particular, the omitted Google stock." The court did not find credible Eugene's testimony that he was unaware of the impact of the tax basis or its effect on the "actual value" of the assets. It found that Eugene admitted that he had not factored the additional shares of Google stock received between April and June 2019 into the community property division. It further found that "factoring the post-tax value of an asset allows for a more accurate calculation of its value."

5

Based on its findings, the trial court concluded that "[t]he parties received different values of stock in what was to be an equal division of an asset." Because "there was not an equal division of their stock," the court found there was "good cause for an unequal division of assets." With respect to the omitted asset, the court ordered Eugene to transfer "one-half of the community shares of Google stock (36 shares as of July 2019, including any subsequent stock splits) to [Katia]." The court did not explicitly address, and declined to divide, the additional 10 shares of Google stock Eugene had acquired after separation but before the division of assets. The court also declined to award Eugene any attorney fees.

This appeal followed.

## II.  DISCUSSION

Eugene raises three primary claims on appeal. He challenges the trial court's decision not to order an unequal division of the omitted Google stock by arguing that the court's findings do not justify its order, that it relied on inapplicable law, and that it abused its discretion in refusing to offset any amount that Katia already received as value for that asset. In addition, he asserts the trial court erred by refusing to issue a statement of decision. He also contends the trial court violated his right to due process by denying his peremptory challenge and failing to explain its decision in the requested statement of decision. Katia challenges Eugene's claims on the merits and further argues the appeal was brought for an improper purpose, warranting the imposition of sanctions.

*A.  Division of the Google Stock*

The remand in *Strulyov* directed the trial court to decide "whether the interests of justice require an unequal division of the Google stock" under sections 2556 and 2550. (*Strulyov*, *supra*, H050115.) The parties agree that this issue, grounded in the principles that govern the division of community property, is reviewed for an abuse of discretion. (See *In re Marriage of Campi* (2013) 212 Cal.App.4th 1565, 1572; *In re Marriage of*

6

*Schleich* (2017) 8 Cal.App.5th 267, 276.) Eugene also asks this court to review de novo the trial court's application of sections 2556 and 2550.

We begin our analysis mindful that an "order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) We review orders concerning the distribution of marital property upon the dissolution of a marriage for abuse of discretion. (*In re Marriage of Greaux & Mermin* (2014) 223 Cal.App.4th 1242, 1250 (*Greaux & Mermin*).) Where, as here, the trial court has broad discretion to decide whether good cause has been shown to require an unequal division of the omitted asset, " ' " 'appellate courts must act with cautious judicial restraint in reviewing these orders.' " ' [Citation.] An abuse of discretion occurs ' "when it can be said that no judge reasonably could have made the same order." ' " (*In re Marriage of Grimes & Mou* (2020) 45 Cal.App.5th 406, 424 (*Grimes & Mou*).) More specifically, " '[i]f the court's decision is influenced by an erroneous understanding of applicable law or reflects an unawareness of the full scope of its discretion, the court has not properly exercised its discretion under the law.' " (*Wade v. Superior Court* (2019) 33 Cal.App.5th 694, 709.) Thus, an abuse of discretion occurs " 'if the trial court based its decision on impermissible factors [citation] or on an incorrect legal standard.' " (*Ibid*.) We further review the trial court's factual findings for substantial evidence, deferring to the trial judge on issues of credibility. (*Grimes & Mou*, at p. 421; see *Jennifer K. v. Shane K.* (2020) 47 Cal.App.5th 558, 579.) To the extent that Eugene challenges the trial court's application of sections 2556 and 2550, we review de novo the construction of a statute and its applicability to the facts. (*In re Marriage of Thornton* (2002) 95 Cal.App.4th 251, 253–254.)

Examining the statutory law and record on remand, we conclude the trial court neither erred in applying section 2556 nor abused its discretion in ordering Eugene to transfer one-half of the 36 shares of Google stock as of July 2019, including any

subsequent stock splits, to Katia. This court's remand in *Strulyov* expressly directed the trial court to consider the application of sections 2556 and 2550 to the division of the omitted asset. (*Strulyov*, *supra*, H050115.) Section 2550 reflects the broad statutory powers conferred to the family courts "to accomplish a just and equal division of marital property" (*Greaux & Mermin*, *supra*, 223 Cal.App.4th at p. 1250, citing §§ 2550, 2553) and affords the court " 'broad discretion to determine the manner in which community property is awarded in order to accomplish an equal allocation.' " (*Greaux & Mermin*, at p. 1250.) Section 2556 provides the courts continuing jurisdiction to address community assets or community liabilities that were not "previously adjudicated by a judgment in the proceeding." Under the statute, "the court shall equally divide the omitted or unadjudicated community estate asset or liability, unless the court finds upon good cause shown that the interests of justice require an unequal division of the asset or liability." (§ 2556.)

Eugene contends that section 2556 is not applicable to the present case because the omitted asset—here, the Schwab account containing the 36 Google shares previously deemed to be community property—was not, in fact, omitted but was already included in the cash value divided at equalization. He argues that since Katia had already received cash value for the 18 Google shares, the grant of another 18 Google shares in kind effectively awarded her 100 percent of the asset ("50% via equalization + 50% in kind").

This argument disregards this court's prior opinion in which we upheld the determination that the 36 shares of Google stock were not adjudicated in the judgment and thus were an omitted asset.[6] Eugene's argument also misconstrues the sole issue to be determined on remand, which was whether the interests of justice required an unequal

---

[6] As related in our prior opinion, the determination of an "omitted" asset under section 2556 depends on whether the asset was actually litigated and divided—not whether it was mentioned in the property division. (See *Strulyov*, *supra*, H050115; *In re Marriage of Thorne & Raccina* (2012) 203 Cal.App.4th 492, 501.)

division of the omitted asset (§ 2556), not to relitigate whether the Google stock had been omitted. Eugene's reliance on *In re Marriage of Rossi* (2001) 90 Cal.App.4th 34 to distinguish these facts from a case in which the omitted asset was "truly omitted" (boldface omitted) because one party concealed and retained the asset, while the aggrieved party received nothing at all, is inapt.

Having reviewed the transcript of the evidentiary hearing, we conclude that the trial court did not err in applying section 2556. The court correctly recognized that the question before it was limited to the division of the omitted Google stock. Specifically, this court's remand directed the trial court to determine whether the interests of justice required an unequal division of that specific community asset. (§ 2556.) After conducting the evidentiary hearing and reviewing the parties' written submissions, the court concluded that the interests of justice did *not* require an unequal division of the omitted Google stock. In explaining that decision, the court explicitly found "good cause for an unequal division of assets," citing factors including Eugene's unilateral exercise of control over which stocks to transfer and the financial consequences of those choices. We understand this finding to pertain to the community assets in general—not specifically to the Google stock. In other words, even assuming (as seems likely) the trial court accepted Eugene's arguments about having divided the value of the Schwab investment account as of April 2019, it nevertheless decided the omitted asset in question, i.e., the 36 shares of Google stock, should remain equally divided even if that ultimately led overall to an unequal division of community assets.[7]

---

[7] Admittedly, the language in the trial court's order is somewhat ambiguous. The ruling that "[t]he parties received different values of stock in what was to be an equal division of an asset. Thus, there was not an equal division of their stock" and that there is "good cause for an unequal division of assets" could be interpreted to mean that even if the stock value overall was equally divided (as Eugene contends), an unequal division favoring Katia (based on the division of the 36 shares of Google stock) was justified based on Eugene's attempt to capture the tax benefits for himself and the other factors

Eugene argues that the trial court abused its discretion by refusing to apply offsets to the award of in kind Google stock despite his showing that the full value of both Schwab accounts (including the account containing the Google shares) was included in the value calculated at equalization. He points to this court's statement in the prior appeal noting that his exhibits filed in opposition of Katia's motion for determination and division of the Google stock "support[ed] his contention that the full value of both Schwab accounts was included in the numbers from which Katia and Eugene determined the total value of the community property" and argues that since Katia admittedly received the equalization payment, the trial court "had the duty to quantify" any alleged underpayment "and award only that amount to [Katia]."

This is not what the statute requires. The family court's broad discretion to award community property "to accomplish a just and equal division" (*Greaux & Mermin*, *supra*, 223 Cal.App.4th at p. 1250) extends to an omitted or unadjudicated community asset or liability after judgment, "unless the court finds upon good cause shown that the interests of justice require an unequal division of the asset or liability." (§ 2556.) The statute does not delineate or constrain the trial court in considering factors relevant to the interests of justice in allocating the omitted asset, nor does it require the court to expressly identify the value of each previously divided asset in determining whether the interests of justice warrant unequal division of the omitted asset.

In this case, the trial court heard evidence and testimony from both sides regarding the division of assets under the 2019 judgment. Eugene sought to establish that Katia received more than half of the community property based on his calculations of stock values—whether applying April 2019 stock values (when Eugene calculated the equalization) or July 2019 stock values (when Eugene divided the accounts). Katia

---

cited by the court. Regardless of which interpretation applies, we uphold the trial court's order as a valid exercise of its discretion based on those findings, for which there is substantial evidence.

countered that by transferring those stocks to her with the lowest cost basis and saddling her with potentially significant higher taxes, and by calculating stock values as of April rather than July 2019, Eugene failed to divide the investment account equally. In considering these arguments, the trial court weighed the evidence and assessed each side's credibility.

The trial court found that Eugene's unilateral selection of those stocks he transferred to Katia (rather than transferring one-half of all stock holdings valued at the time of transfer), through which he allocated capital gains to her but not to himself, resulted in Katia receiving less than one-half of the community stock assets. The court further found Eugene's testimony not credible regarding his lack of awareness about the impact of the tax basis when deciding which stocks to transfer to Katia. The court found it was undisputed that Eugene did not factor into his calculations the additional 10 shares of Google stock that he received between the parties' separation in April 2019 and the division of community assets in July 2019, but simply kept those shares. The court thus concluded that "there was not an equal division" of the community property stock assets and rejected Eugene's request for unequal division of the omitted asset. It ordered Eugene to transfer "one-half of the community shares of Google stock (36 shares as of July 2019, including any subsequent stock splits)" to Katia. Furthermore, the court declined to address additional issues raised by the parties at the hearing on remand, including Katia's breach of fiduciary duty claim and her request for division of the 10 additional Google shares.

Examining the entire record, we perceive no abuse of discretion in the trial court's evaluation of the evidence or its good cause determination. Substantial evidence in the record, including the April 8, 2019 e-mail from Eugene to Katia cited in the trial court's order, demonstrated Eugene's sophisticated financial literacy and understanding of investment strategy and tax consequences. This evidence supports the court's credibility finding in which it rejected Eugene's claim that he was unaware of the impact of the tax

11

basis or its effect on the value of the assets he transferred.  The record also supports the trial court's determination that factoring the post-tax value of an asset provides a more accurate picture of value and that the parties "received different values of stock in what was to be an equal division of an asset."  Based on its finding that Eugene failed to divide the investment account equally, the trial court did not act arbitrarily in ordering Eugene to transfer one-half of the 36 Google shares previously held to be an omitted asset.  On this record, we decide it cannot be said " ' "that no judge reasonably could have made the same order." ' "  (*Grimes & Mou*, *supra*, 45 Cal.App.5th at p. 424.)

Eugene contends that the trial court's order dividing equally the 36 shares of Google stock exacerbates what he maintains was an already unequal division of community assets.  However, Eugene's argument is based on the faulty premise that the trial court's task was to divide the omitted Schwab account to ensure that each party received an equal division of overall community assets.  This was not the posture of the case on remand, nor could it have been given the nature of the property division under the 2019 judgment, which was by agreement of the parties pursuant to a stipulated order.

Division of the community estate by agreement negates the requirement that the community estate be divided equally.  (§ 2550 ["*Except upon the written agreement of the parties*, . . . the court shall, either in its judgment of dissolution of the marriage, . . . divide the community estate of the parties equally."  (Italics added)].)  Thus, the relative value of the property divided in the 2019 judgment (including vehicles, Eugene's condominium, and other assets raised in the parties' arguments and testimony on remand) and whether it reflected equal division or was skewed slightly in favor of one party, as Eugene contends, might have been a relevant factor for the court's consideration but was by no means determinative in the court's assessment of good cause under section 2556 to order the omitted asset be divided unequally.

In sum, the purpose of the hearing on remand was not to relitigate the fairness or relative values of the original division of property under the 2019 judgment.  The remand

12

required the trial court to decide whether the omitted asset—here, the 36 shares of Google stock—should be equally divided between the parties pursuant to section 2556, or whether the interests of justice required an unequal division under that provision. We conclude that substantial evidence in the record supports the trial court's finding of good cause as to the overall division of assets, based on the factors it considered in relation to Eugene's unilateral control over that division, its rejection of Eugene's request for unequal division of the omitted Google stock, and its implicit rejection of Katia's request for an award of additional stock shares and attorney fees. The court thus did not abuse its discretion in ordering Eugene to transfer one-half of the 36 Google shares in the account as of July 2019 to Katia.

### B. Statement of Decision

Eugene contends the trial court was required to issue a statement of decision and the error requires reversal. We disagree.

Code of Civil Procedure section 632 provides that "upon the trial of a question of fact by the court," the trial court "shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial upon the request of any party appearing at the trial." The rule of court governing procedures for issuance of a statement of decision similarly applies "[o]n the trial of a question of fact by the court." (Cal. Rules of Court, rule 3.1590.)

It is settled law that Code of Civil Procedure section 632 generally "applies when there has been a trial followed by a judgment. [Citation.] It does not apply to an order on a motion. [Citation.] This is true even if the motion involves an evidentiary hearing and the order is appealable." (*In re Marriage of Askmo* (2000) 85 Cal.App.4th 1032, 1040 (*Marriage of Askmo*); see also *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1294; accord *City and County of San Francisco v. H.H.* (2022) 76 Cal.App.5th 531, 544.) Although courts have created exceptions to the general rule for special proceedings (often for decisions involving child custody), application of the exception is based on " ' "(1) the

13

importance of the issues at stake in the proceeding, including the significance of the rights affected and the magnitude of the potential adverse effect on those rights; and (2) whether appellate review can be effectively accomplished even in the absence of express findings." ' " (*Marriage of Askmo*, at p. 1040; *H.H.*, at p. 545.)

Katia argues that a statement of decision was not required here because the limited issue on remand was "not a 'trial of a question of fact' " within the meaning of Code of Civil Procedure section 632 but "more akin to a hearing on a motion." Eugene does not directly address the applicability of Code of Civil Procedure section 632 and appears to assume that a statement of decision was required in light of his timely request to the trial court.[8]

We agree with Katia that the narrow scope of this court's remand in *Strulyov*, *supra*, H050115, requiring only a decision on whether there exists good cause to divide the omitted Google stock asset unequally, falls outside the purview of a "trial of a question of fact" as specified in the statute. The evidentiary hearing that took place and the trial court's factfinding role in weighing the credibility of the parties' testimony concerning Eugene's 2019 division of the investment account does not render it a trial of fact for purposes of requiring a statement of decision. (*Marriage of Askmo*, *supra*, 85 Cal.App.4th at p. 1040.) Nor has Eugene shown that the issue on remand, confined solely to the disputed division of the omitted Google shares, is of such importance and magnitude, or so infeasible to review on appeal in the absence of express findings, as to except it from the general rule on issuance of a statement of decision.

Eugene accuses the trial court of subjecting him to unequal treatment (because he is male) and violating his right to equal protection, based on the court issuing a statement of decision in response to Katia's request in the earlier proceeding while refusing to issue

---

[8] Given Eugene's request to the trial court for a statement of decision and his arguments on appeal concerning the court's failure to provide the requested statement of decision, we decline to resolve this aspect of the appeal on the basis of forfeiture.

14

a statement of decision in this proceeding. However, this differential treatment derives from the statutory distinction between a limited scope hearing on remand and a "trial of a question of fact" (Code Civ. Proc., § 632), such as occurred in this case in March 2022, giving rise to the appeal in *Strulyov*, *supra*, H050115. In that two-day bench trial, the parties litigated multiple issues, including, among others, the parties' breach of fiduciary duty claims, the community or separate property status of certain real property, the division of the investment account, and Katia's entitlement to attorney fees, costs, and sanctions. The trial court did not err in its application of Code of Civil Procedure section 632, and its decision on remand to issue an order rather than a statement of decision does not evince bias against Eugene.

Even assuming that a statement of decision was required, Eugene has not shown that the failure to issue a statement of decision meets the standard for reversal. Eugene relies on *Miramar Hotel Corp. v. Frank B. Hall & Co.* (1985) 163 Cal.App.3d 1126, 1127, 1130 for the proposition that a trial court's failure to provide a statement of decision when timely requested is per se reversible error. However, our Supreme Court has since clarified that a trial court's erroneous failure to issue a statement of decision is not reversible per se but is subject to harmless error analysis. (*F.P. v. Monier* (2017) 3 Cal.5th 1099, 1108 (*Monier*); see Cal. Const., art. VI, § 13; *Alafi v. Cohen* (2024) 106 Cal. App. 5th 46, 61 (*Alafi*).)

As explained in *Monier*, the California Constitution "explicitly identifies 'any error as to any matter of procedure' ([Cal. Const., art. VI, § 13]) as error that warrants reversal only if a miscarriage of justice would otherwise result." (*Monier*, *supra*, 3 Cal.5th at p. 1113.) The " 'express terms' " of the Constitution " 'weigh against automatic reversal' [citation] for a court's procedural error in failing to issue a statement of decision." (*Ibid*.) Reversible error in this context thus "requires a demonstration of prejudice 'arising from the reasonable probability the party "would have obtained a better outcome" in the absence of the error.' " (*Alafi*, *supra*, 106 Cal. App. 5th at p. 62.)

15

Eugene argues that this case "easily meets" the miscarriage of justice and reversible standard discussed in *Monier*. He maintains that the trial court could not meaningfully evaluate good cause for unequal division of the Google shares without addressing the specific issues, particularly the "dollar value of community property" (boldface omitted) divided in 2019, which he asked the court to address in a statement of decision. He disputes Katia's assertion that there can be no prejudice because the court's order after hearing adequately addressed the bases for the court's ruling and thus sufficed as a statement of decision.

We are not persuaded by either argument. For the reasons discussed *ante*, the trial court was not obligated on remand to make factual findings on the precise value of the community property divided at equalization to exercise its discretion on remand to decide whether good cause justified unequal division of the omitted asset. Furthermore, the trial court's order adequately set forth the basis for its decision, finding that Eugene's prior allocation of stock to Katia did not result in an equal division of the assets in that account and that Eugene's testimony explaining the allocation was not credible. The issues that Eugene contends the trial court failed to address in its order are not, in fact, necessary for determination and do not compromise this court's ability to exercise appellate review. Thus, this is not a situation in which one or more material issues "left unaddressed by a court's failure to issue" a statement of decision effectively inhibits adequate appellate review. (*Monier*, *supra*, 3 Cal.5th at p. 1116.) We conclude that any failure by the trial court to issue a statement of decision or expressly address the questions posed by Eugene in his trial brief is, at most, harmless error.

*C. Peremptory Challenge*

Eugene challenges the trial court's denial of his Code of Civil Procedure section 170.6 peremptory challenge, and its refusal to explain the basis for its untimeliness ruling in a statement of decision, as a violation of his right to due process.

Code of Civil Procedure section 170.6 authorizes a motion to disqualify the assigned judge "following reversal on appeal of a trial court's decision, . . . if the trial judge in the prior proceeding is assigned to conduct a new trial on the matter." (Code Civ. Proc., § 170.6, subd. (a)(2).) A party must bring the disqualification motion "within 60 days" after being notified of the assignment following reversal on appeal. (*Ibid.*) The denial of a disqualification motion may be reviewed only by petition for writ of mandate filed and served within 10 days of written notice of the court's decision on disqualification. (Code Civ. Proc., § 170.3, subd. (d).) Thus, " '[a]n order denying a peremptory challenge is not an appealable order and may be reviewed only by way of a petition for writ of mandate.' " (*People v. Superior Court (Tejeda)* (2016) 1 Cal.App.5th 892, 900; see *People v. Hull* (1991) 1 Cal.4th 266, 275 (*Hull*) ["The Legislature, through [Code of Civil Procedure] section 170.3[, subdivision] (d), has specifically determined that a writ of mandate shall be the exclusive means of challenging a denial of a motion to disqualify a judge."].) A trial court's denial of a peremptory challenge under Code of Civil Procedure section 170.6 is reviewed de novo. (*Sandoval v. Superior Court* (2023) 95 Cal.App.5th 1274, 1282.)

In apparent recognition that he may not seek review of the denial of his peremptory challenge on appeal, Eugene frames his argument in terms of due process. He cites *People v. Mayfield* (1997) 14 Cal.4th 668, a death penalty case abrogated on other grounds in *People v. Scott* (2015) 61 Cal.4th 363, 390, footnote 2, and *Marshall v. Jerrico, Inc.* (1980) 446 U.S. 238, as support for his contention that he did not receive a "fair trial before 'an impartial and disinterested tribunal.' " In *Mayfield*, the California Supreme Court recognized that although a petition for writ of mandate is the exclusive method of review of a judicial disqualification motion, "a defendant may assert on appeal a claim of denial of the due process right to an impartial judge." (*Mayfield*, at p. 811.) After examining the entire record, the court declared it found nothing to support the defendant's charge that the judge in that case had to be disqualified for bias and racial

17

prejudice. (*Id*. at pp. 810–811.) Meanwhile, *Marshall* addresses the potential for bias in the enforcement of federal child labor standards and does not support Eugene's contention that the denial of his peremptory challenge gives rise to a due process violation. (Cf. *Marshall*, at pp. 244–247.)

Eugene lists several examples of alleged prejudice by the trial judge, including the court's "inexplicable denial" of the peremptory challenge, "allowing [Katia] to relitigate old issues that she had already lost" while refusing to rule on his reasserted claim of duress, and the "refusal to issue [a] statement of decision" or "make any determination as to the" dollar amounts. (Some capitalization omitted.) He also asserts bias in relation to several issues raised in the prior appeal.

Eugene offers no authority to support his otherwise conclusory contentions that these decisions, which he perceives as adverse, were, in fact, the result of prejudice. (See *People v. Avila* (2009) 46 Cal.4th 680, 696 (*Avila*) [" '[A] trial court's numerous rulings against a party—even when erroneous—do not establish a charge of judicial bias, especially when they are subject to review.' "].) Nor does our review of the record reveal support for Eugene's characterization of the trial judge's decisions. On the contrary, the record reflects that the judge attempted to limit both parties at the evidentiary hearing to evidence and examination that was relevant to the narrow issue on remand and did not allow one side to "relitigate old issues" while imposing lopsided limits on the other side.

Whether the trial court erred in calculating the timeliness of Eugene's peremptory challenge based on the 60-day window available on remand (Code Civ. Proc., § 170.6, subd. (a)(2)) is not reviewable in this appeal. (Code Civ. Proc., § 170.3, subd. (d); *Hull*, *supra*, 1 Cal.4th at p. 275.) Moreover, with respect to his due process claim, Eugene has not shown that that any such error in denying the peremptory challenge was because the judge had prejudged the case or was not impartial. (See, e.g., *People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 994 [rejecting capital defendant's judicial bias claim on the merits]; *Avila*, *supra*, 46 Cal.4th at p. 696.)

We conclude that Eugene has failed to provide persuasive support for his claims of judicial prejudice, bias, and deprivation of his due process right to a fair trial.

*D. Katia's Motion for Sanctions*

Katia seeks sanctions in the form of attorney fees in the amount of $10,475.74 against Eugene because the appeal is "objectively devoid of merit on its face" and was brought "for an improper purpose."  In arguing the appeal is meritless, Katia points to the limited question presented for determination on remand, the discretion afforded the trial court to consider additional evidence and decide on the division of the omitted stock asset, and the court's reasoned findings and order, including its rejection of her request for some portion of the additional 10 shares of Google stock and for attorney fees.  She maintains that under the circumstances, there "is simply no legal basis on which a reasonable person could believe [the appeal] ha[s] any legal merit."  Katia further asserts that Eugene brought the appeal not to raise meritorious legal claims but as a vehicle for airing his grievances with the trial court, repeating the same arguments raised at the hearing and in the prior appeal and causing her to expend additional time and resources to defend against the appeal.

Eugene counters in his reply brief that the appeal is not frivolous but presents an issue of first impression as "the first 'omitted assets' case in history" where the " 'aggrieved party' " (1) "had already received cash value of the 'omitted' asset and then was awarded the asset itself by the Family Court" and (2) "had already received more than half of community property in the initial division and then had her share further increased by [the] Family Court."

"Whether to impose appellate sanctions is a matter within our discretion. [Citation.]  Under [Code of Civil Procedure] section 907 and California Rules of Court, rule 8.276(a)(1), we may award sanctions when an appeal is frivolous and taken solely to cause delay."  (*Citizens for Amending Proposition L v. City of Pomona* (2018) 28 Cal.App.5th 1159, 1194.)  "[A]n appeal should be held to be frivolous only when it is

19

prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.) "The two standards are often used together, with one providing evidence of the other. Thus, the total lack of merit of an appeal is viewed as evidence that appellant must have intended it only for delay." (*Id*. at p. 649.) Furthermore, to avoid chilling the assertion of a litigant's rights on appeal, the sanctions power "should be used most sparingly to deter only the most egregious conduct." (*Id*. at p. 651.)

Having reviewed the record and arguments of the parties, we conclude the threshold for imposing sanctions has not been reached in this case. It is true that the claims raised in the appeal are largely premised on Eugene's misapprehension of the nature of the remand order and his erroneous insistence that the trial court was obligated to ensure an equal division of the overall community property when dividing the Google stock. Nevertheless, we disagree with Katia that Eugene's arguments are entirely unreasonable. Nor do we agree from our review of the record that Eugene's motives were clearly improper.

We therefore decline to exercise our discretion to impose sanctions and deny Katia's motion.

## III. DISPOSITION

The March 25, 2024 order after hearing is affirmed. Respondent is entitled to her reasonable costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

_____
                        Danner, Acting P. J.

WE CONCUR:

_____
Wilson, J.

_____
Bromberg, J.

**H052147**
*Strulyov v. Strulyov*